**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**CRYSTAL A. SPONENBERG,** :
   Plaintiff :
   v. : **CIVIL ACTION NO. 4:CV-07-1300**
**MICHAEL J. ASTRUE,** : **(McCLURE, D.J.)**
Commissioner of : **(MANNION, M.J.)**
Social Security :
   Defendant :

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits, ("DIB"), under Title II of the Social Security Act, ("Act").  42 U.S.C. §§ 401-433.

## I. PROCEDURAL HISTORY.

The plaintiff protectively filed an application for DIB on March 28, 2005, alleging disability since April 21, 2004, due to back problems, and migraine headaches.  (TR. 39).  The state agency denied her claim initially and she filed a timely request for a hearing.  (TR. 30, 34).  A hearing was held before an Administrative Law Judge, ("ALJ"), on September 6, 2006.  (TR. 211-33). At the hearing, the plaintiff, represented by counsel, and a vocational expert, ("VE"), testified.  (TR. 211-33).  The plaintiff was denied benefits pursuant to the ALJ's decision of October 20, 2006.  (TR. 11-20).

The plaintiff requested review of the ALJ's decision. (TR. 10). The Appeals Council denied her request on May 21, 2007, thereby making the ALJ's decision the final decision of the Commissioner.  (TR. 5-9).  42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 8 and 9).

## II.     STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy"

>means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (2004). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520.

In the present matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act. (TR. 14-20). At step one, the ALJ found that the plaintiff has not engaged in substantial gainful work activity at any time since her alleged disability onset date. (TR. 16). At step two, the ALJ concluded that the plaintiff's back problems and migraine headaches were "severe" impairments within the meaning of the Regulations. (TR. 16-17). At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed

3

impairments in Appendix 1, Subpart P, Regulations No. 4. (TR. 16-17).

At step four, the ALJ found that the plaintiff is unable to perform any of her past relevant work. (TR. 18-19). The ALJ found at step five that the plaintiff has the residual functional capacity, ("RFC"), to perform sedentary work activity with restrictions. (TR. 17). The ALJ determined that there are a significant number of jobs in the national economy that the plaintiff can perform. (TR. 19-20). Thus, the ALJ concluded that the plaintiff had not been under a disability, as defined in the Act, since April 21, 2004, her alleged disability onset date. 20 C.F.R. § 404.1520(g). (TR. 20).

## IV.   BACKGROUND.

### *A.  Factual Background.*

The plaintiff was born on October 7, 1960 and was forty-four (44) years old on the alleged disability onset date. (TR. 19, 39). She is therefore considered a "younger" individual under the Regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). The plaintiff received a Graduate Equivalency Diploma, ("GED"), and has past relevant work experience as an assembler, cook, food prep/dishwasher and certified nurse's assistant. (TR. 64, 215-16, 228-29). The plaintiff last worked in 2003. (TR. 216).

At the time of the ALJ hearing, the plaintiff was not receiving treatment for her back because she could not afford it. (TR. 218).

The plaintiff testified that she cleans her house, does laundry, cooks, grocery shops, drives, takes care of her grandchildren, gardens, swims and reads. (TR. 221-22). The plaintiff believes she can lift up to fifteen pounds. (TR. 222). On good days, the plaintiff can walk two hundred yards and is able to feed her twenty-one chickens. (TR. 223). On bad days, the plaintiff mainly sits, needs help walking, requires help getting up and dressing and she does not do her household chores unless she has to. (TR. 223-24). The plaintiff

watches television and uses the computer. (TR. 224-25).

Vocational expert, Gerald Keating, testified based on the *Dictionary of Occupational Titles*. (TR. 229-32). In response to hypothetical questions posed by the ALJ, the VE testified that the plaintiff would be able to perform work as a small products assembler, a general cashier and a telephone solicitor. (TR. 229-30).

### B. Medical Background.

The plaintiff treated with Thomas C. Connelly, M.D., in 2004 for her back pain. (TR. 93-94). On January 8, 2004, the plaintiff underwent an MRI of the lumbar spine which revealed discogenic disease and bulging at L1-L2 through L5-S1, posterior disc protrusions, a radial annulus tear and left posterior herniated nucleus pulposus, ("HNP"). (TR. 94, 141-42).

In April 2004, Dr. Connelly noted that an EMG confirmed polyneuropathy[1] and carpal tunnel syndrome. (TR. 93).

The plaintiff treated with neurologist Hani J. Tuffaha, M.D., in February 2004. (TR. 146-47). Dr. Tuffaha noted that the plaintiff had intractable thoraco-lumbar back pain with right leg paresthesias. (TR. 147). Dr. Tuffaha recommended that the plaintiff remain active. (TR. 147).

From May through November 2004, the plaintiff treated with Stuart Olinsky, M.D., and his physician's assistant, Amanda Jones-Sutliff, PA-C. (TR. 96-102). Their assessment was low back pain and paresthesias, bilateral carpal tunnel syndrome, migraine headaches and morning incontinence. (TR. 97, 99, 101).

On October 7, 2004, the plaintiff underwent an x-ray of the lumbosacral

---

[1] Polyneuropathy is a disease process involving a number of peripheral nerves. *Stedman's Medical Dictionary*, 1422 (27th ed. 2000).

spine. (TR. 131). The x-ray revealed satisfactory alignment with vertebral bodies of normal stature, satisfactorily maintained disc spaces, minor degenerative lipping and symmetrical sacroiliac joints. (TR. 131).

The plaintiff went to the emergency room on March 15, 2005 complaining of back pain. (TR. 103-11). The clinical impression was acute myofascial lumbar strain and acute low back pain. (TR. 106).

A Disability Determination Services, ("DDS"), physician completed a Physical RFC on May 20, 2005. (TR. 112-19). The physician found that the plaintiff was able to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, sit, stand and walk for six hours in an eight-hour workday and push and/or pull unlimitedly. (TR. 113). He found no postural, manipulative, visual, communicative or environmental limitations. (TR. 114-16).

On October 12, 2005, the plaintiff underwent an MRI of the lumbar spine. (TR. 138-39). The MRI revealed central disc protrusions at L3-L4 through L5-S2, disc bulges throughout the lumbosacral spine, a herniated disc at T11-T12, components of Schmorl's nodes and reactive changes and no adverse change regarding disc protrusions/herniations or respective compromise of the thecal sac since the prior study. (TR. 138-39).

Jay Miller, M.D., treated the plaintiff on several occasions and completed a Physical Capacity Evaluation on August 31, 2006. (TR. 185). Dr. Miller found that the plaintiff was unable to work at that time. He opined that the plaintiff could lift up to ten pounds and stand, walk, sit and drive for one hour or less. (TR. 185). Dr. Miller also found that the plaintiff could not carry, squat, climb or reach overhead. (TR. 185).

The plaintiff was in a car accident in June 2006 and injured her neck, back and right knee. (TR. 192-95). She also complained of headaches, however a CAT scan revealed no abnormalities. (TR. 194).

6

An x-ray of the plaintiff's cervical spine on July 27, 2006 revealed chronic multilevel degenerative disc abnormality with no fracture. (TR. 197).

An MRI of the plaintiff's cervical spine on September 7, 2006 revealed posterior spondylotic ridging and narrowing of the right foramina at C4-5 and C6-7. (TR. 196).

Subsequent to the ALJ hearing, the plaintiff underwent a thoracic laminectomy performed by Rodwan K. Rajjoub, M.D., on October 25, 2006. (TR. 202-03). The plaintiff tolerated the procedure well and was in good condition afterwards. (TR. 203)*.*

## V. DISCUSSION.

### *A. Whether the Appeals Council erred in failing to consider the newly submitted evidence.*

The plaintiff states that the ALJ erred by failing to consider medical records from Dr. Rajjoub. (Doc. 8 at 5-7).

In *Szubak v. Sec'y of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984), the court stated that to admit new evidence, it "must first be 'new' and not merely cumulative of what is already in the record." *Id*. It must also be material, meaning that it is "relevant and probative" and there is a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." *Id.* "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Id.*

Additionally, when evidence is presented for the first time to the district court, the claimant must demonstrate "good cause for not having incorporated the new evidence into the administrative record." *Szubak*, 745 F.2d at 833;

7

*see also Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).

The ALJ hearing was held on September 6, 2006 and the ALJ entered his decision on October 20, 2006. (TR. 11-20). The plaintiff underwent an MRI of the cervical spine on September 7, 2006, one day after the ALJ hearing. (TR. 196). The ALJ considered this MRI when rendering his decision. Dr. Rajjoub's treatment notes are dated October 13, 2006 and October 19, 2006 and the plaintiff underwent surgery on October 25, 2006. (TR. 199-208).

The plaintiff states that the records from Dr. Rajjoub are "new" because Dr. Rajjoub interpreted the September 7, 2006 MRI and assessed a new diagnosis of T1-T2 HNP. (Doc. 8 at 6-7) (TR. 208). This assessment appears in Dr. Rajjoub's October 13 and 19, 2006 treatment notes and in his notes following the surgery. (TR. 199, 205, 208). After the plaintiff's thoracic laminectomy on October 25, 2006, Dr. Rajjoub diagnosed T1-T2 HNP, cervical spondylosis, disc protrusion, hypothyroidism, asthma, headaches and low back pain syndrome. (TR. 199-203).

The defendant states that Dr. Rajjoub's treatment notes are not "new" because they predate the ALJ's decision. (Doc. 9 at 15). The defendant acknowledges that Dr. Rajjoub's surgery notes are "new" because they postdate the ALJ's decision. However, the defendant states that this "new" evidence would not have changed the ALJ's decision. (Doc. 9 at 15). The ALJ considered the September 7, 2006 MRI when rendering his decision, the same MRI that Dr. Rajjoub interpreted. (TR. 18). The ALJ found that the plaintiff's back impairment was severe, however he then found that the plaintiff's impairments failed to meet the requirements of any of the listed impairments. (TR. 16-17). There is not a reasonable possibility that Dr. Rajjoub's notes would have changed the ALJ's determination that the plaintiff was not disabled. *See Szubak*, 745 F.2d at 833.

The defendant also states that the plaintiff's own testimony conflicts with

the new evidence. (Doc. 9 at 15-16). As indicated above, and as discussed more fully below, the plaintiff testified that she is capable of performing many daily activities. Such evidence conflicts with the plaintiff's allegation that she is totally disabled.

The defendant next states that the plaintiff has failed to show good cause for not submitting the evidence to the ALJ. (Doc. 9 at 16). During the hearing, the ALJ asked the plaintiff if she intended to submit additional evidence after the hearing and the plaintiff responded, no. (TR. 214). The plaintiff stated that she was undergoing an MRI the day after the hearing and the ALJ left the record open to allow the plaintiff time to submit the MRI report. (TR. 232).

The plaintiff states that she did not submit Dr. Rajjoub's notes earlier because they were not prepared until after the ALJ hearing and were not available to present to the ALJ. Dr. Rajjoub's treatment notes were prepared before the ALJ rendered his decision and the surgery notes were prepared after the ALJ's decision. However, the surgery notes would not have changed the ALJ's determination. Dr. Rajjoub's diagnosis of a T1-T2 HNP was provided in his October 13 and 19, 2006 treatment notes. (TR. 205, 208). Dr. Rajjoub's surgery notes state that the plaintiff tolerated the procedure well, she was transferred to recovery in good condition and her prognosis was "good." (TR. 199, 203). After the surgery, Dr. Rajjoub noted that the plaintiff was healing well and she was up and walking around. (TR. 200).

The Appeals Council received all of the evidence from Dr. Rajjoub and made them part of the record. (TR. 9). In its decision, the Appeals Council noted that it considered the September 7, 2006 MRI and that the ALJ also considered the MRI. (TR. 6).

The records at issue are not new because Dr. Rajjoub evaluated the plaintiff prior to the ALJ's decision. The records are not material because

9

there is not a reasonable possibility that they would have changed the ALJ's decision.  *See Szubak*, 745 F.2d at 833.  Further, the plaintiff has failed to show good cause for not submitting the evidence to the ALJ.  Therefore, the plaintiff is not entitled to a remand based upon the medical records from Dr. Rajjoub.

### *B. Whether the ALJ erred in rejecting the opinion of Dr. Miller.*

The plaintiff states that the ALJ erred by rejecting Dr. Miller's opinion that she is unable to work and by failing to state why he rejected the opinion. (Doc. 8 at 7).

An ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991); *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986).  When the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."  *Plummer*, 186 F.3d at 429 (citing *Mason*, 994 F.2d at 1066).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.  *Plummer*, 186 F.3d at 429;

*Frankenfield*, 861 F.2d at 408; *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983).

The ALJ noted that the plaintiff has been under the care of Dr. Miller since June 2006. (TR. 16, 18). He noted that in August 2006 Dr. Miller opined that the plaintiff could not work full-time. (TR. 18). The ALJ stated that the plaintiff's most recent MRI does not show any herniated discs, cord or nerve root impingement or stenosis. (TR. 16). He also stated that the MRI results indicate that the plaintiff will improve. (TR. 18). The ALJ therefore found that the injuries the plaintiff sustained in the June 2006 car accident do not render her totally disabled. (TR. 16). The ALJ accorded limited weight to Dr. Miller's opinion that the plaintiff is permanently disabled finding it inconsistent with the other evidence of record. (TR. 18).

The record contains the report of a DDS physician who reviewed the evidence of record and determined that the plaintiff is capable of performing light work activity. (TR. 112-19). State agency consultants are "highly qualified" physicians and experts in the evaluation of the medical issues in disability claims under the Act, and their opinions must be considered by the ALJ. *See* Social Security Ruling 96-6p and 20 C.F.R. § 404.1527(f). The ALJ found that the DDS physician's findings were consistent with the evidence of record. (TR. 18). However, the ALJ found that the plaintiff was slightly more limited than the DDS physician opined. (TR. 18).

Moreover, Dr. Miler's opinion that the plaintiff is permanently disabled is not entitled to controlling weight because such a determination is reserved to the Commissioner. (TR. 18). A medical source's opinion as to the ultimate conclusion of disability is not dispositive because opinions of disability are reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

Based on the foregoing, substantial evidence supports the ALJ's

evaluation of Dr. Miller's opinion.

### C. Whether the ALJ erred in rejecting the plaintiff's subjective complaints of pain.

The plaintiff's last argument is that the ALJ erred in finding that her subjective complaints were not entirely credible. (Doc. 8 at 7-8).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")." *Frazier v. Apfel*, 2000 WL 288246 (E.D. Pa. 2000).

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. First, symptoms, such as pain, shortness of breath, fatigue, *et cetera,* will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b).

The ALJ found that the plaintiff suffers from the severe impairments of back problems and migraine headaches. (TR. 16). The ALJ then found that

the plaintiff was not entirely credible. (TR. 18). The ALJ summarized the plaintiff's daily activities and the opinions of the doctors. (TR. 14). The ALJ stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§] 404.1529, and SSRs 96-4p and 96-7p." (TR. 17).

As stated above, the plaintiff testified that she is able to cook, clean, do laundry, grocery shop, drive, take care of her grandchildren, garden, swim, read, watch television and use the computer. (TR. 221-22, 224-25). The plaintiff can lift up to fifteen pounds, on good days she can walk two hundred yards and feed her chickens. (TR. 222-23). On bad days, the plaintiff is more limited and she does not do her household chores unless she has to. (TR. 223-24).

On her May 2005 disability questionnaire, the plaintiff indicated that her spouse, grandchild, daughter, son-in-law and her animals depend on her for care. (TR. 68). The plaintiff again reported that if she is having a good day, she is able to cook, clean, do laundry, feed the animals, take out the trash, vacuum and grocery shop. TR. 68-69).While gardening the plaintiff sometimes sits on the ground or crawls on her knees to plant and weed. (TR. 69). She reported that she likes to swim, garden, bake, sew, read, play with her grandchildren, care for her animals, have cookouts, listen to music, use the computer and spend time with her family and friends. (TR. 70). If the plaintiff is having a bad day, many of these activities are limited. The plaintiff stated that she has not had to stop any activities, she just does not do certain things on her bad days. (TR. 70). The activities described by the plaintiff are inconsistent with allegations of total disability.

The ALJ also considered the objective evidence of record. (TR. 17-18). Regarding the plaintiff's back impairment, the plaintiff has had relatively

unremarkable MRIs and x-rays. Although there is evidence of some abnormalities and limitations, the ALJ found that the plaintiff's ability to perform daily activities are inconsistent with her claims of being totally disabled. (TR. 18).

The ALJ considered the plaintiff's subjective complaints of limitations, but discounted the plaintiff's claims of debilitating limitations as not entirely credible. (TR. 18). Substantial evidence supports the ALJ's finding that the plaintiff's subjective complaints were not entirely credible and that she is able to perform sedentary work activity with restrictions.

## VI.  CONCLUSION.

Based upon the foregoing, **IT IS RECOMMENDED THAT**:

the plaintiff's appeal from the decision of the Commissioner of Social Security denying her claim for DIB, (Doc. 1), be **DENIED**.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date**: April 3, 2008
O:\shared\REPORTS\2007 Reports\07-1300.01.hhs.wpd